IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Case No. 1:23-cv-346

| | |
|---|---|
| VERONICA D. NEWKIRK,      ) | |
|          ) | |
|     Plaintiff,     ) | |
|          ) | |
| v.          ) | COMPLAINT |
|          ) | |
| TROOPER CHRISTOPHER COLTON  ) | |
| WADE in his individual and official  ) | |
| capacities, TROOPERS JOHN DOES 1-2,  ) | (Jury Trial Demanded) |
| in their individual and official capacities,  ) | |
| COMMANDER GLENN M. MCNEILL,  ) | |
| JR., in his individual and official capacity,  ) | |
| NORTH CAROLINA HIGHWAY  ) | |
| PATROL, SECRETARY EDDIE M.  ) | |
| BUFFALOE, JR., in his individual and  ) | |
| official capacity, NORTH CAROLINA  ) | |
| DEPARTMENT OF PUBLIC SAFETY,  ) | |
| DEPUTIES JANE DOES 1-4 in their  ) | |
|  individual and official capacities,  ) | |
| DETENTION CAPTAIN MICHAEL  ) | |
| MAUNEY, in his individual and official  ) | |
| DETENTION MAJOR RODNEY FITCH,  ) | |
| in his individual and official capacity,  ) | |
| SHERIFF ALAN NORMAN, in his  ) | |
| individual and official capacity,  ) | |
| CLEVELAND COUNTY SHERIFF'S  ) | |
| OFFICE, and LIBERTY MUTUAL  ) | |
| INSURANCE COMPANY.  ) | |
|          ) | |
|     Defendants.  ) | |
| _____  ) | |

NOW COMES Plaintiff VERONICA D. NEWKIRK, by and through her undersigned counsel, and complains of the Defendants as follows:

1

# INTRODUCTION

1. On or about November 24, 2020, around 2:00 am, Trooper Christopher Colton Wade of the North Carolina State Highway Patrol, approached a van that was pulled off the roadway of Exit 8 of Interstate 85 in Cleveland County, North Carolina.  Plaintiff Veronica Newkirk was sleeping in the backseat of the van.  She was committing no crime and did not need assistance.

2. Defendant Wade should have known that he had no lawful authority to demand identification from Ms. Newkirk and no reason, authority, or justification to arrest her.  Defendant Wade responded with aggression to Ms. Newkirk's refusal to speak to him.

3. Using his authority as a law enforcement officer, Defendant Wade demanded identification from Ms. Newkirk and that she wake up and move to the front of the van and talk to him.  When Ms. Newkirk told him that she did not need assistance and wanted to be left alone, Defendant Wade threatened to arrest her.  Ms. Newkirk felt like she was unable to leave and began to look for her identification.  She was not able to quickly find it in the dark van.

4. Defendant Wade ordered Ms. Newkirk out of the van and placed her under arrest.  In the process of making that arrest, violently threw her onto the roadway, slamming her face, head, and knee into the pavement.  Defendant Wade's actions broke Ms. Newkirk's nose, broke two of her front teeth, scraped and bruised her face and lips, caused a concussion, damaged her knee, and destroyed her glasses.  Ms. Newkirk has suffered permanent physical injury, pain and suffering, mental and emotional anguish, humiliation, fear for her personal safety, lost wages, loss of ability to work in her chosen profession, loss of earning capacity, and many other particulars that the evidence will show.

5. Defendant Wade's excessive force and unlawful arrest of Ms. Newkirk have caused her painful and permanent physical injuries, continuing mental health damage and trauma, persistent neurological damage, financial loss, loss of professional ability and opportunity, and violated her civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, the North Carolina Constitution, and the statutory and common law.

6. Before arresting Ms. Newkirk but after telling her she was going to jail, Defendant Wade contacted Trooper John Doe 1 who agreed with, condoned, or directed the arrest of Ms. Newkirk without authority or probable cause.

7. Defendant Wade's supervisors and training officers with the North Carolina State Highway Patrol, identified herein as Trooper John Does 1-2, Commander Glenn M. McNeill, Jr. of the North Carolina Highway Patrol, and Secretary Eddie M. Buffaloe, Jr. of the North Carolina Department of Public Safety also violated Ms. Newkirk's civil rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, the North Carolina Constitution, and the statutory and common law by condoning or directing her lawful arrest and/or establishing and perpetuating a climate,

2

custom, and pattern of unlawful arrests and assaultive behavior toward citizens and arrestees.

8. After making the unlawful arrest and slamming Ms. Newkirk onto the pavement, Defendant Wade transferred Ms. Newkirk to the care of Defendant Alan Norman, Sheriff of Cleveland County, North Carolina, who operates the Cleveland County Detention Center.

9. While being held at the Cleveland County Detention Center, Defendant Deputy Jane Does 1-4 punished and humiliated Ms. Newkirk, without any legitimate security, law enforcement, or detention purpose by forcing her to strip naked in front of a security camera so that other deputies could watch; denying her access to medical care for her injuries and concussion symptoms; and placing her on lockdown as additional punishment, all of which violated her civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, the North Carolina Constitution, and the statutory and common law.

10. Defendants Detention Captain Michael Mauney, Detention Major Rodney Fitch, and Sheriff Alan Norman also violated Ms. Newkirk's civil rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, the North Carolina Constitution, and the statutory and common law by condoning or directing the actions of Defendants Jane Doe 1-4 and/or establishing and perpetuating a climate, custom, and pattern of denying detainees access to medical care and allowing deputies to humiliate and punish detainees.

## PARTIES AND JURISDICTION

11. Veronica D. Newkirk is a citizen and resident of the City of Winston-Salem in the State of North Carolina.

12. This incident occurred in Cleveland County, North Carolina.

13. Upon information and belief, Defendant Trooper Christopher Colton Wade is a citizen and resident of the State of North Carolina who, at all times relevant herein, was employed by the North Carolina State Highway Patrol, acting in both his individual and official capacities and within the course and scope of his employment.

13. Upon information and belief, Defendant Trooper John Does 1-2 are citizens and residents of the State of North Carolina who, at all times relevant herein, were employed by the North Carolina State Highway Patrol, acting in both their individual and official capacities and within the course and scope of their employment.

14. Defendant Commander Glenn M. McNeill, Jr., is a citizen and resident of the State of North Carolina, and, at all times relevant herein, was the Commander for the North Carolina State Highway Patrol (hereinafter "NCHP"). Defendant McNeill is sued in his individual and his official capacity for the failure to supervise and train the employees of NCHP to include but not limited to Defendants Wade, John Doe 1-2, and McNeill, and as the final policymaker for the agency, the deficiencies of which proximately caused the

violation of Plaintiff's rights as guaranteed by the U.S. Constitution, the North Carolina Constitution, statutory and common law.

15. Defendant Secretary Eddie M. Buffaloe, Jr. is the Secretary for the North Carolina Department of Public Safety (hereinafter "NCDPS"), and is responsible for supervising, operating, and managing the NCHP. Defendant Buffaloe is sued in his individual and his official capacity for the failure to supervise and train the commanders and/or directors of agencies within his purview as Secretary of NCDPS and the employees of NCHP, and as the final policymaker for NCDPS and all of its agencies, the deficiencies of which proximately caused the violation of Plaintiff's rights as guaranteed by the U.S. Constitution, the North Carolina Constitution, statutory and common law.

16. Defendant NCHP is a law enforcement agency for the State of North Carolina, and NCDPS is a political subdivision of the State of North Carolina and controls and operates the NCHP. NCHP and NCDPS are liable for the actions of their employees and agents acting within the course and scope of their employment and/or on behalf of the agencies.

17. Defendants Deputies Jane Doe 1-4, upon information and belief, are citizens and residents of the State of North Carolina who, at all times relevant herein, were employed by and/or under the supervision and control of the Cleveland County Sheriff's Office, acting in both their individual and official capacities and within the course and scope of their duties within the Cleveland County Detention Center.

18. Defendant Detention Captain Michael Mauney and Defendant Major Rodney Fitch, upon information and belief, are citizens and residents of the State of North Carolina who, at all times relevant herein, acting in both their individual and official capacities and within the course and scope of their employment by the Cleveland County Sheriff's Office with duties including the oversight, management, and supervision of detainees and employees of the Cleveland County Detention Center to include the responsibility of policymaking decisions.

19. Defendant Sheriff Alan Norman is a citizen and resident of the State of North Carolina, and, at all times relevant herein, was the duly-elected Sheriff of Cleveland County, North Carolina, acting within the course and scope of his duties as an elected official and charged by statute with the non-delegable duty of control and operation of the Cleveland County Detention Center. Defendant Norman is named in both his individual capacity under 42 U.S.C. §1983 as the final policymaker for the policies, practices and customs of the Cleveland County Detention Center, and in his official capacity under N.C.G.S. § 58-76-5 & § 153A-435, and all other relevant legal authority, as the final policymaker for policies and practices at the jail that proximately caused Plaintiffs injuries and loss. Those practices, taken under color of law, were objectively unreasonable and violated the Plaintiff's Fourteenth Amendment right to due process.

19. Further, upon information and belief, Sheriff Norman, through Cleveland County, had, at the time of the incident waived governmental or sovereign immunity from the state law tort claims in this case pursuant to G.S. § 153A-435, either by participating in a

4

government risk pool or through purchasing commercial insurance that will indemnify him and his agents for any judgment against him or his agents named in this action.

20. Defendant Cleveland County Sheriff's Office is a law enforcement agency within the State of North Carolina and is responsible for the actions of its employees acting within the course and scope of their employment.

21. Defendant Liberty Mutual Insurance Company is an insurance company which conducts business in the State of North Carolina. Upon information and belief, Liberty Mutual Insurance Company holds a surety bond for Sheriff Alan Norman under N.C.G.S. §58-76-5 which provides coverage for any injury caused by the neglect of malfeasance of the Sheriff or his employees.

22. Defendant Liberty Mutual Insurance Company is sued as the Sheriffs surety under G.S. § 58-76-5. On information and belief, it has issued the statutorily mandated surety bond to cover any injury caused by the neglect or malfeasance of the Sheriff or of those he employs. Sheriff Norman is obligated under state law to obtain and maintain said surety bond and by doing so, waives sovereign or governmental immunity as to the claims in this matter, at least to the extent of the bond.

23. Defendants Jane Doe 1-4, Mauney, Fitch, and Norman are sued in their official capacities under the surety bond, under the indemnity coverage provided by the government risk pool or by commercial insurance, and under N.C.G.S. § 153A-224, all of which waive or defeat any claim of sovereign immunity, government immunity, or its derivative public officer immunity.

24. This action arises pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution, Article I §19 of the North Carolina Constitution, and the North Carolina statutory and common law and is brought pursuant to 42 U.S.C. § 1983.

25. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. §1343(a), and is authorized to grant Plaintiff's prayer for relief regarding costs and reasonable attorney's fees under 42 U.S.C. § 1988.

26. Venue is proper in the Western District of North Carolina.

27. Upon information and belief, Defendant Sheriff Alan Norman and/or the Cleveland County Sheriff's Office, maintains a bond pursuant to N.C. Gen. Stat. § 58-76-5, which provides a plain and unmistakable waiver of sovereign immunity.

28. Plaintiff demands a jury trial on all issues and claims set forth herein.

**FACTS**

29. On or about Wednesday, November 24, 2020, hours before dawn, Ms. Veronica D. Newkirk had pulled her van off of the roadway on the Exit 8 ramp off Interstate 85 in Cleveland County, North Carolina. Ms. Newkirk was traveling back to her home in Winston-Salem North Carolina. She felt too tired to drive the next 100 miles home, so

5

she pulled her van completely off the road, placed the van in park, secured the emergency brake, turned off all of the van's lights, locked the doors, and moved to the backseat to sleep. Ms. Newkirk left the engine running so that the heat would stay on while she rested. She rested undisturbed for over two hours.

30. Ms. Newkirk was sleeping quietly in the back of her van. Defendant Trooper Christopher Colton Wade of the North Carolina State Highway Patrol appeared at Ms. Newkirk's van driver's window, banging on it, and shining his flashlight into the van. He began yelling into the van, demanding that Ms. Newkirk come to the front to talk to him.

31. Ms. Newkirk told Defendant Wade that she was okay and did not need assistance. She told him that she was the owner of the van and asked him to leave her alone.

32. Defendant Wade continued to insist that Ms. Newkirk come to the driver's seat and demanded to see her drivers' license. Ms. Newkirk continued to ask Defendant Wade to leave her alone and told him to run the tags on the car if he needed proof that she owned the van.

33. Defendant Wade told Ms. Newkirk that she had to provide identification or she would go to jail. Upon being threatened with arrest, Ms. Newkirk maneuvered herself to the front of the van, spoke to Defendant Wade and continued to plead with him to leave her alone and that she did not need help.

34. Defendant Wade saw Ms. Newkirk in the back of the van and knew that she was not operating or controlling the vehicle. He had no lawful authority to demand a drivers' license or other proof of identification from her.

35. Instead of leaving Ms. Newkirk in peace, Defendant Wade continued to harass and intimidate her and demand that she produce identification. After Defendant Wade threatened to arrest Ms. Newkirk, she moved to the front of the van where he could see and hear her. Defendant Wade continued to demand that she produce identification. He walked away from the van saying, "I hope you like jail."

36. Defendant Wade went back to his patrol car and called Trp. John Doe 1, informing him that he found a woman sleeping in the back of her van and asking him if he had the right to demand identification. Upon information and belief, Defendant John Doe 1 authorized or directed the arrest of Ms. Newkirk. Deputy Wade said he was going to "bust the windows out" to get to Ms. Newkirk.

37. During this time, after being told she would be arrested and believing that she was not free to leave, Ms. Newkirk began to look for her drivers' license. The interior lights were not working, and she could not find her license fast enough for Defendant Wade.

38. Before Ms. Newkirk could find her license, Defendant Wade was back at the van, yelling, ordering her to "Get out of the vehicle! You are going to jail!" Defendant Wade demanded Ms. Newkirk out of the vehicle in an aggressive, and threatening tone.

6

39. Ms. Newkirk is a small stature, Black female, on the side of a dark and empty interstate exit in rural North Carolina. She feared for her safety and was slow to comply with Defendant Wade's orders. She was scared, crying, and pleading, "Why are you arresting me?" Ms. Newkirk never made an aggressive move or threat to Defendant Wade.

40. Defendant Wade was putting handcuffs on Ms. Newkirk's wrists behind her back when, suddenly and without any warning, Defendant Wade violently flung Ms. Newkirk's body onto the pavement, slamming her face directly into the asphalt. At the time of the assault Ms. Newkirk had her hands behind her back and was pinned on the vehicle by Defendant Wade. Ms. Newkirk was not resisting.

41. Defendant Wade's body slam move broke Ms. Newkirk's nose, broke two of her front teeth, scratched and scraped her face and lip leading to bleeding, bruising, and swelling. Her glasses frames and lenses were scratched so badly that she could not see. Her knee was also driven into the pavement causing bruising and swelling that made walking painful for many weeks. After this senseless brutal move by Defendant Wade, Ms. Newkirk was not able to eat or chew solid food for over two weeks while the trauma to her mouth healed.

42. Ms. Newkirk's humiliation was not over. Defendant Wade transported her to the Cleveland County Detention Center, operated by the Cleveland County Sheriff's Office and Sheriff Alan Norman. There she was strip searched and forced to disrobe and stand naked in front of cameras so that the entire jail staff could watch. The female detention officer, Jane Doe 1, directing the search intentionally placed Ms. Newkirk in view of the camera, staging the search so that others could watch. Placing Ms. Newkirk in front of cameras so that others could see her naked served no legitimate purpose and was done as a means to further degrade Ms. Newkirk and entertain the jail staff.

43. Once in a cell, Ms. Newkirk's swelling to her face got worse. She began to get a headache that worsened until she was in excruciating and debilitating pain. She began to experience vertigo, noting that she could not stand and keep her balance without holding onto a wall or the jail bars. As a licensed registered nurse, Ms. Newkirk knows the signs and symptoms of a concussion and requested that Jane Doe 2, the deputy on duty at the time, bring the nurse or allow her go to the nurse. Jane Doe 2 refused Ms. Newkirk's requests for medical attention multiple times.

44. While she was in custody at the Cleveland County Detention Center, Ms. Newkirk was physically threatened by white female detainee in the presence of 2 female officers, Jane Doe 3 and Jane Doe 4. After hearing the other detainee threaten to punch Ms. Newkirk, Deputy Jane Does 3 and 4 did not take action against that detainee but instead punished Ms. Newkirk by moving her to another area of the jail and placing Ms. Newkirk on lock down.

45. Based on Ms. Newkirk's observations, she was the only black detainee in the Cleveland County Detention Center. Ms. Newkirk was treated differently than the white detainees in that she was punished by being placed on lockdown after a white detainee threatened her with assault, while the white detainee received no disciplinary action or punishment.

46. Ms. Newkirk's family posted bail in the amount of $1200 in order to secure her release.

47. In order to defend herself against the baseless criminal charges of failure to produce identification and resisting arrest, Ms. Newkirk retained a criminal defense attorney at great personal expense.

48. All criminal charges against Ms. Newkirk were dropped before the court session for her trial began.

49. Since her unlawful, brutal arrest and detainment, Ms. Newkirk has been followed by Cleveland County Sheriff's Deputies every time she travels through Cleveland County on Interstate 85, more than three times since the arrest. There is no probable cause to justify surveillance of Ms. Newkirk and this harassment and intimidation continues to damage Ms. Newkirk's mental health.

50. As a direct and proximate result of the conduct of the Defendants alleged herein, Ms. Newkirk has suffered damages in the following particulars:

     a. violation of her rights under the Unites States Constitution, North Carolina Constitution, and statutory and common law;
     b. permanent physical and mental injuries;
     c. medical expenses;
     d. future expenses for medical and psychological treatment;
     e. lost wages;
     f. pain and symptoms associated with Post Concussion Syndrome;
     g. permanent disability;
     h. physical and mental anguish;
     i. loss of earning capacity;
     j. loss of enjoyment of life; and
     k. in such other particulars as the evidence will show.

### FOR A FIRST CAUSE OF ACTION
### (Fourth Amendment – unlawful arrest)
### Defendants Wade and John Doe 1

51. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

52. The Fourth Amendment of the United States Constitution establishes the right of the people to be secure in their persons, houses, papers, and effects, against all unreasonable searches and seizures and includes the right to be free from unlawful arrest.

53. On or about November 24, 2020, Defendant Trooper Christopher Colton Wade, in his individual capacity and acting under color of law, violated Plaintiff's Fourth Amendment rights by unlawfully arresting the Plaintiff and by directing the unlawful search of her van.

8

54. Defendant Wade did not possess a warrant, probable cause, or any other lawful authority for the arrest of Plaintiff.

55. Defendant Wade did not witness the commission of any crime by Plaintiff.

56. Defendant Wade did not act as an objectively reasonable officer and is not entitled to qualified immunity.

57. Upon information and belief, Defendant John Doe 1 authorized and/or directed the arrest of Plaintiff without probable cause.

58. As a result of the willful conduct by Defendants Wade and John Doe 1 and/or their deliberate indifference and reckless disregard for Plaintiff's constitutional rights, Plaintiff suffered damages including but not limited to loss of liberty, loss of security in her person, physical restraint, invasion of her privacy, unlawful search of her property, psychological and emotional trauma, persistent neurological damage, lost wages, loss of earning capacity, costs and attorney fees.

59. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendant Wade pursuant to 42 U.S.C. §§ 1983 and 1988.

## FOR A SECOND CAUSE OF ACTION
### (Fourth Amendment – Excessive Force)
### Defendant Wade

60. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

61. The Fourth Amendment of the United States Constitution establishes the right of the people to be secure in their persons, houses, papers, and effects, against all unreasonable searches and seizures and includes the right to be free from unreasonable uses of force.

62. On or about November 24, 2020, Plaintiff got out of her van in compliance with the requests that Defendant Wade screamed at her. Defendant Wade slammed and pinned Plaintiff in a standing position with her face against the van while he placed handcuffs on her wrists behind her back.

63. While pinned against the van, Plaintiff posed no threat to Defendant Wade or anyone else. Plaintiff made no quick or furtive movements and did not threaten the safety of Defendant Wade, other officers, or any member of the public.

64. Plaintiff did not make any movements of resistance or attempt to evade arrest or flee.

65. Defendant Wade, in his individual capacity and acting under color of law, violated Plaintiff's Fourth Amendment rights by suddenly and without warning or provocation, throwing Plaintiff's body onto pavement while holding her wrists behind her back, slamming her face, head, and knees against the asphalt.

9

66. Defendant Wade's use of force on Plaintiff was unlawful, objectively unreasonable, and wholly unjustified.

67. Defendant Wade did not act as an objectively reasonable officer and is not entitled to qualified immunity.

68. As a result of the willful conduct by Defendant Wade and/or his deliberate indifference and reckless disregard for Plaintiff's constitutional rights, Plaintiff suffered damages including but not limited to a closed head injury, concussion, broken nose, broken teeth, lacerations and contusions to her face and lips, injury to her knees, persistent neurological damage, loss of liberty, loss of security in her person, pain and suffering, medical costs, lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

69. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendant Wade pursuant to 42 U.S.C. §§ 1983 and 1988.

**FOR A THIRD CAUSE OF ACTION**
**(First Amendment)**
**Defendant Wade**

70. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

71. When approached by Defendant Wade, Plaintiff refused assistance and declined to engage with him. Plaintiff's conduct is protected speech pursuant to the First Amendment of the United States Constitution, including but not limited to her right to refuse an unlawful order and criticism of a law enforcement officer.

72. As a result of Plaintiff's conduct and speech, Defendant Wade retaliated by intimidating Plaintiff and threatening her with arrest.

73. Defendant Wade's conduct caused Plaintiff to suffer injury that would chill a person of ordinary firmness from continuing to engage in protected activity.

74. Defendant Wade's retaliatory conduct was unlawful, objectively unreasonable, and wholly unjustified.

75. Defendant Wade did not act as an objectively reasonable officer and is not entitled to qualified immunity.

76. As a result of the willful conduct by Defendant Wade and/or his deliberate indifference and reckless disregard for Plaintiff's constitutional rights, Plaintiff suffered damages including but not limited to a closed head injury, concussion, broken nose, broken teeth, lacerations and contusions to her face and lips, injury to her knees, persistent neurological damage, loss of liberty, loss of security in her person, pain and suffering, medical costs,

lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

77. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendant Wade pursuant to 42 U.S.C. §§ 1983 and 1988.

**FOR A FOURTH CAUSE OF ACTION**
**(Supervisory claim)**
**Defendants John Doe 1-2 and McNeill**

78. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

79. On or about November 24, 2020, Defendants John Doe 1-2 and McNeill were the supervisory and/or training officers for Defendant Wade and were responsible for the supervision of his actions and proper training regarding warrantless arrests. Defendant John Doe 1 is identified as the officer Defendant Wade called on or about November 24, 2020; Defendant John Doe 2 is identified as the supervisor and/or training officer for Defendant Wade.

80. Defendant Commander Glenn M. McNeill, Jr., under the authority granted to him as the Commander of the NCHP, was responsible for establishing, enforcing, directing, supervising, and controlling the training of officers of the NCHP, including Defendant Wade.

81. Upon information and belief, Defendants John Doe 1-2 and McNeill had actual or constructive knowledge that Defendant Wade was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as Plaintiff, namely arresting citizens without cause or authority and Defendant Wade's ignorance of the law of North Carolina.

82. In response to this knowledge, Defendants John Doe 1-2 and McNeill's actions were so inadequate as to show deliberate indifference to or tacit authorization of Defendant Wade's conduct.

83. As a direct and proximate result of the inaction and/or authorization of Defendant Wade's action by Defendants John Doe 1-2 and McNeill, Plaintiff suffered damages including but not limited to an unlawful arrest, closed head injury, concussion, broken nose, broken teeth, lacerations and contusions to her face and lips, injury to her knees, persistent neurological damage, loss of liberty, loss of security in her person, pain and suffering, medical costs, lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

84. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendants John Doe 1-2 and McNeill pursuant to 42 U.S.C. §§ 1983 and 1988.

## FOR A FIFTH CAUSE OF ACTION
### (Monell Liability)
### Defendants McNeill and Buffaloe

85. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

86. On or about November 24, 2020, Defendant Commander Glenn M. McNeill, Jr., under the authority granted to him as the Commander of the NCHP, was responsible for establishing, enforcing, directing, supervising, and controlling the policies, procedures, customs, practices, and usages applicable to the employees of the NCHP.

87. On or about November 24, 2020, Defendant Buffaloe, under the authority granted to him as the Secretary of NCDPS, was responsible for establishing, enforcing, directing, supervising, and controlling the policies, procedures, customs, practices, and usages applicable to departments within NCDPS, to include the NCHPand its employees.

88. Defendant McNeill, by his actions in improperly training and/or supervising officers of the NCHP or in failing to train and/or supervise officers of the NCHP, has maintained a policy, custom, or pattern of (1) failing to educate law enforcement officers on the proper standard for an arrest without a warrant; (2) failing to educate law enforcement officers on their authority to demand identity (3) facilitating and condoning aggressive, abusive, and assaultive behavior toward citizens and while effectuating arrests; (4) allowing officers ignorant of North Carolina law to interact and effect arrests of citizens; and (5) in such other particulars as the evidence will show.

89. Defendant Buffaloe, by his actions in improperly and/or failing to train and/or supervise the departments and department heads of NCDPS, to include NCHP, has maintained a policy, custom, or pattern of (1) failing to train departments on the proper standards for law enforcement officers under North Carolina law; (2) failing to ensure department have adequate training programs for law enforcement officers; (3) failing to supervise the discipline and/or training programs utilized by NCDPS; (4) failing to exercise reasonable oversight of the department; (5) facilitating and condoning aggressive, abusive, and assaultive behavior toward citizens and while effectuating arrests; and (6) in other particulars as the evidence will show.

90. Defendants McNeill and Buffaloe knew or should have known of the need to properly train and/or supervise law enforcement officers of the NCHP in the proper treatment of citizens they encounter, persons under arrest, and those in their custody; to refrain from hostile or vindictive actions against citizens and/or arrestees; improper and unreasonable uses of force against arrestees; proper grounds and authority for arrests without a warrant; and in such other particulars as the evidence may show.

91. Upon information and belief, the failure to properly supervise and/or train by Defendants John Doe 1 and 2, the unjustified decision to arrest Plaintiff, and the excessive force used by Defendant Wade in the arrest of Plaintiff, all of which resulted in the violation of

Plaintiff's civil rights, were consistent with the policies, procedures, patterns, and customs of the NCHP and NCDPS.

92. Upon information and belief, the failure to properly supervise and/or train department heads, the failure to ensure law enforcement officers have adequate knowledge of North Carolina law, and the harassment and use of excessive force against citizens, all of which resulted in the violation of Plaintiff's civil rights, were consistent with the policies, procedures, patterns, and customs of the NCDPS.

93. A reasonable policymaker would know or should have known of the behaviors of Defendants Wade and John Does 1 and 2 and that the policy, procedure, pattern, practice, and customs of failing to properly train and/or supervise and the promoting, facilitating, and condoning of unlawful arrests and excessive uses of force would lead to the violation of civil rights of arrestees and pretrial detainees.

94. Defendant McNeill knew or should have known that the behaviors of the Defendants would lead to the violations of civil rights of arrestees and pretrial detainees and acted with deliberate indifference to this risk.

95. A reasonable policymaker would know or should have known of the behaviors of Defendant McNeill and that the policy, procedure, pattern, practice, and customs of failing to properly train and/or supervise department heads and the promoting, facilitating, and condoning of unlawful arrests and excessive uses of force would lead to law enforcement conduct which violates the civil rights of citizens.

96. Defendant Buffaloe knew or should have known that the behaviors of the NCHP commander and the law enforcement officers under his supervision would lead to the violations of civil rights of citizens and acted with deliberate indifference to this risk.

97. As a direct result of Defendants McNeill and Buffaloe's policy, procedure, pattern, practice, and custom of promoting, facilitating, and condoning these behaviors and failures as indicated above, Plaintiff suffered violations of her civil rights and suffered damages including but not limited to an unlawful arrest, closed head injury, concussion, broken nose, broken teeth, lacerations and contusions to her face and lips, injury to her knees, persistent neurological damage, loss of liberty, loss of security in her person, pain and suffering, medical costs, lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

98. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendants McNeill and Buffaloe pursuant to 42 U.S.C. §§ 1983 and 1988 and *Monell v. Dept. of Social Servs., 436 U.S. 658 (1977)*.

**FOR A SIXTH CAUSE OF ACTION**
**(Fourteenth Amendment)**
**Defendants Jane Doe 1-4**

13

99. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

100.     On or about November 24, 2020, Plaintiff was held at the Cleveland County Detention Center in the custody of the Cleveland County Sheriff's Office as a pretrial detainee.

101.     While Plaintiff was in custody at the detention center, Defendant Jane Doe 1 forced Plaintiff to disrobe in clear view of a security camera, with the video being simultaneously displayed to unknown employees and detainees of the Cleveland County Detention Center.

102.     Forcing the Plaintiff to appear naked on camera served no legitimate law enforcement purpose and was used as a means to humiliate and punish Plaintiff.

103.     While in her cell at the Cleveland County Detention Center, Plaintiff began to experience symptoms of vertigo, an excruciating and debilitating headache, and increased facial swelling after the head injury incurred during her unlawful arrest.  Plaintiff asked Defendant Jane Doe 2 for medical assistance multiple times.

104.     Defendant Jane Doe 2 repeatedly refused Plaintiff's request for medical assistance and treatment.  Such refusal served no legitimate law enforcement purpose and was used as a means to further punish Plaintiff.

105.     Defendants Jane Doe 3 and Jane Doe 4 witnessed another detainee, a white woman, threatened to punch, hit, and/or otherwise attack Plaintiff.  Defendants Jane Doe 3 and 4 moved Plaintiff, the only black detainee present in the Cleveland County Detention Center at that time, to another cell and placed her on lockdown status.  The white detainee was not disciplined for her threats.

106.     The movement of Plaintiff and placing her on lockdown served no legitimate law enforcement purpose and was used as a means to further punish Plaintiff.

107.     None of the actions of Defendants Jane Doe 1-4 were related to a legitimate government objective or interest or, in the alternative, their actions were excessive in relation to the purported government interest.

108.     As a result of the actions of Defendants Jane Doe 1-4, Plaintiff suffered objectively harmful injury and pain sufficiently serious to establish a constitutional violation.

109.     Plaintiff's pain and injuries are more than de minimis.

110.     The actions of Defendants Jane Doe 1-4 in order to cause Plaintiff injury, pain, and humiliation, all without a legitimate government purpose, are repugnant and serve to shock the conscience.

111.     Defendants Jane Doe 1-4 failed to act as objectively reasonable officers under similar situations and are not entitled to qualified immunity.

14

112.    As a result of the willful conduct by Defendants Jane Doe 1-4 and/or their deliberate indifference and reckless disregard for Plaintiff constitutional rights, Plaintiff suffered damages including but not limited to untreated concussion symptoms, excruciating and debilitating headaches, persistent neurological damage, punitive shame and humiliation, racially disparate treatment, loss of liberty, loss of security in his person, pain and suffering, psychological and emotional trauma, costs and attorney fees.

113.    Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendants Jane Doe 1-4 pursuant to 42 U.S.C. §§ 1983 and 1988.

## FOR A SEVENTH CAUSE OF ACTION
### (Supervisory Liability)
### Defendants Mauney and Fitch

114.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

115.    On or about November 24, 2020, Defendants Detention Captain Michael Mauney and Detention Major Rodney Fitch, were the supervisory and/or training officers for Defendants Jane Doe 1-4 and were responsible for the supervision of their actions and proper training regarding the treatment and custody of pretrial detainees.

116.    Upon information and belief, Defendants Mauney and Fitch had actual or constructive knowledge that Defendants Jane Doe 1-4 were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to pretrial detainees such as Plaintiff, namely taking action to humiliate and punish pretrial detainees with no legitimate government interest or law enforcement purpose.

117.    In response to this knowledge, Defendants Mauney and Fitch's actions were so inadequate as to show deliberate indifference to or tacit authorization of Defendants Jane Doe 1-4's conduct.

118.    As a direct and proximate result of the inaction and/or authorization of Defendants Jane Doe 1-4's actions by Defendants Mauney and Fitch, Plaintiff suffered damages including but not limited to untreated concussion symptoms, excruciating and debilitating headaches, persistent neurological damage, punitive shame and humiliation, racially disparate treatment, loss of liberty, loss of security in his person, pain and suffering, psychological and emotional trauma, costs and attorney fees.

119.    Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendants Mauney and Fitch pursuant to 42 U.S.C. §§ 1983 and 1988.

## FOR AN EIGHTH CAUSE OF ACTION
### (Monell Liability)
### Defendant Norman

120. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

121. On or about November 24, 2020, Defendant Sheriff Alan Norman, under the authority granted to him as the duly-elected Sheriff of Cleveland County, North Carolina, was responsible for establishing, enforcing, directing, supervising, and controlling the policies, procedures, customs, practices, and usages applicable to the employees of the Cleveland County Detention Center.

122. Defendant Norman, by his actions in improperly training and/or supervising deputies of the Cleveland County Sheriff's Office and/or Detention Center or in failing to train and/or supervise deputies of the Cleveland County Sheriff's Office and/or Detention Center, has maintained a policy, custom, or pattern of (1) failing to educate and/or train law enforcement officers on the proper standard for care for a pretrial detainee, and (2) facilitating and condoning aggressive, abusive, and behavior intended to punish, shame, and humiliate pretrial detainees.

123. Defendant Norman knew or should have known of the need to properly train and/or supervise law enforcement officers of the Cleveland County Sheriff's Office and/or Detention Center in the proper treatment of pretrial detainees; to refrain from hostile or vindictive actions against pretrial detainees; to refrain from aggressive, abusive, and other behavior intended to punish, shame, and humiliate pretrial detainees; and in such other particulars as the evidence may show.

124. Upon information and belief, the failure to properly supervise and/or train Defendants Jane Doe 1-4 by Defendants Mauney and Fitch, which resulted in the violation of Plaintiff's civil rights, was consistent with the policies, procedures, patterns, and customs of the Cleveland County Sheriff's Office and/or Detention Center.

125. A reasonable policymaker would know or should have known of the behaviors of Defendants Jane Doe 1-4, Mauney, and Fitch, and that the policy, procedure, pattern, practice, and customs of failing to properly train and/or supervise and the promoting, facilitating, and condoning of unlawful arrests and excessive uses of force would lead to the violation of civil rights of arrestees and pretrial detainees.

126. Defendant Norman knew or should have known that the behaviors of the Defendants Jane Doe 1-4, Mauney, and Fitch would lead to the violations of civil rights of arrestees and pretrial detainees and acted with deliberate indifference to this risk.

127. As a direct result of Defendant Norman's policy, procedure, pattern, practice, and custom of promoting, facilitating, and condoning these behaviors and failures as indicated above, Plaintiff suffered violations of her civil rights and suffered damages including but not limited to untreated concussion symptoms, excruciating and debilitating headaches, persistent neurological damage, punitive shame and humiliation, racially disparate treatment, loss of liberty, loss of security in her person, pain and suffering, psychological and emotional trauma, costs and attorney fees.

128.   Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendant Norman pursuant to 42 U.S.C. §§ 1983 and 1988 and *Monell v. Dept. of Social Servs., 436 U.S. 658 (1977)*.

### FOR A NINTH CAUSE OF ACTION
### (North Carolina Constitution)
### Defendants Wade, John Doe 1-2, McNeill, Buffaloe, Jane Doe 1-4, Mauney, Fitch, and Norman

129.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

130.   Pursuant to Article I § 19 of the North Carolina Constitution, no person shall be deprived of his life, liberty or property but by the law of the land.

131.   Defendant Wade violated N.C. Gen. Stat. § 15A-401(d) when he used excessive force in effectuating Plaintiff's arrest on or about November 24, 2020.

132.   Defendants John Doe 1-4, McNeill, Buffaloe, Jane Doe 1-4, Mauney, Fitch and Norman, using their authority as state actors and law enforcement officers, caused physical and emotional harm to Plaintiff, deprived Plaintiff of liberty interests, subjected Plaintiff to actions of humiliation and punishment with no legitimate government interest, and denied Plaintiff medical care, all in violation of North Carolina law.

133.   Defendants Wade, John Doe 1-2, McNeill, Buffaloe, Jane Doe 1-4, Mauney, Fitch, and Norman knew or should have known that their actions were in violation of North Carolina law, and such actions demonstrate a willful and malicious disregard for Plaintiff's rights under North Carolina law.

134.   As a direct result of Defendants Wade, John Doe 1-2, McNeill, Buffaloe, Jane Doe 1-4, Mauney, Fitch, and Norman's conduct, Plaintiff has suffered damages including but not limited to an unlawful arrest, closed head injury, concussion, broken nose, broken teeth, lacerations and contusions to her face and lips, injury to her knees, untreated concussion symptoms, excruciating and debilitating headaches, punitive shame and humiliation, racially disparate treatment, persistent neurological damage, loss of liberty, loss of security in her person, pain and suffering, medical costs, lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

135.   Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from these Defendants.

### FOR A TENTH CAUSE OF ACTION
### (Assault and Battery)
### Defendant Wade, North Carolina State Highway Patrol, and NCDPS

17

136. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

137. Defendant Wade, both individually and acting on behalf of North Carolina State Highway Patrol and NCDPS, arrested Plaintiff without a warrant, without other lawful authority, and without probable cause.

138. Defendant Wade, both individually and acting on behalf of North Carolina State Highway Patrol and NCDPS, used unnecessary, unreasonable, and excessive force, acting with malice and in abuse of his authority as a law enforcement officer, in arresting and restraining Plaintiff.

139. As a result of Defendant Wade's actions, Plaintiff suffered apprehension of immediate bodily harm and bodily harm itself.

140. Defendants Wade, North Carolina State Highway Patrol, and NCDPS are liable to Plaintiff for assault and battery.

141. Plaintiff demands and is entitled to actual and consequential damages in an amount to be determined by a jury.

## FOR AN ELEVENTH CAUSE OF ACTION
### (False Arrest/Imprisonment)
### Defendants North Carolina State Highway Patrol, NCDPS, and Cleveland County Sheriff's Office

142. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

143. Defendant Wade, on behalf of the North Carolina State Highway Patrol and NCDPS, restrained Plaintiff without lawful authority by informing her that she was going to jail for not cooperating with his efforts to get her to move into the drivers seat of her van and for not providing identification.

144. Plaintiff reasonably believed that she was not free to leave the situation.

145. Plaintiff's restraint was intentional and unlawful.

146. Plaintiff's subsequent arrest and restraint was unreasonable and unlawful.

147. Defendant Cleveland County Sheriff's Office took custody of Plaintiff and confined her intentionally and without lawful authority.

148. Defendant Cleveland County Sheriff's Office further continued to unlawfully detain Plaintiff by means of its additional deprivations of her liberty interests in engaging in acts of harassment and humiliation, denial of medical care, and unjustified placement on lockdown.

149. Defendants North Carolina State Highway Patrol, NCDPS, and Cleveland County Sheriff's Office falsely imprisoned Plaintiff.

150. Plaintiff demands and is entitled to actual and punitive damages in an amount to be determined by a jury.

**FOR A TWELFTH CAUSE OF ACTION**
**(Malicious Prosecution)**
**Defendants North Carolina State Highway Patrol, NCDPS and Christopher Colton Wade**

151. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

152. Defendant Wade, acting in his official capacity as an employee/agent of Defendant North Carolina State Highway Patrol and/or NCDPS, initiated a criminal process against Plaintiff without probable cause and with malice, and the prosecution was terminated in Plaintiff's favor.

153. The conduct of Defendant North Carolina State Highway Patrol and/or NCDPS, by and through Defendant Wade, was deliberate, grossly negligent, in bad faith, intentional, corrupt, malicious, wanton, willful, done with conscious or reckless disregard for the rights and safety of others, and/or beyond the scope of his lawful authority.

154. The arrest and prosecution of Plaintiff was unreasonable under the circumstances, was excessive, inappropriate in response to the situation at hand, beyond the statutory authority of a law enforcement officer, and done needlessly, manifesting a reckless indifference to the health, safety, and rights of Plaintiff.

155. The actions of Defendants North Carolina State Highway Patrol and/or NCDPS, by and through Defendant Wade, were deliberate, willful, and in wanton disregard of Plaintiff's rights and privileges under the law.

156. The actions of Defendants North Carolina State Highway Patrol and/or NCDPS, by and through Defendant Wade, proximately and directly caused the foreseeable physical and emotional harm suffered by Plaintiff.

157. Plaintiff demands and is entitled to actual and punitive damages in an amount to be determined by a jury.

**FOR A THIRTEENTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**
**All Defendants**

158. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

159. Defendants engaged in extreme and outrageous conduct against Plaintiff by unreasonably and unjustifiably arresting Plaintiff, unreasonably and unlawfully throwing

19

Plaintiff onto the ground causing serious injury, ignoring Plaintiff's serious need for medical care, deliberately causing physical pain to Plaintiff, intentionally acting in a manner intended to shame, humiliate, and punish Plaintiff for no legitimate purpose, subjecting Plaintiff to racially disparate treatment, and in such other manners as the evidence will show.

160. Defendants' actions were intended to cause severe emotional distress to Plaintiff or were recklessly indifferent to the likelihood that they would cause severe distress.

161. As a result of Defendants' actions, Plaintiff suffered severe emotional distress.

162. Plaintiff demands and is entitled to actual and consequential damages in an amount to be determined by a jury.

### FOR A FOURTEENTH CAUSE OF ACTION
### (Injury by Jailer)
### Defendant Cleveland County Sheriff's Office

163. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

164. Defendant Cleveland County Sheriff's Office, by an through the actions of its employees, caused injury to Plaintiff while confined in the Cleveland County Detention Center by means of their unreasonable conduct, infliction of pain and humiliation, denial of medical care, and racially disparate treatment.

165. As a direct and proximate result of this conduct, Plaintiff suffered damages including but not limited to untreated concussion symptoms, excruciating and debilitating headaches, punitive shame and humiliation, persistent neurological damage, racially disparate treatment, loss of liberty, loss of security in her person, pain and suffering, psychological and emotional trauma, costs and attorney fees.

166. Plaintiff demands and is entitled to actual, consequential damages, and treble damages under N.C. Gen. Stat. § 162-55 in an amount to be determined by a jury.

### FOR A FIFTEENTH CAUSE OF ACTION
### (Claim under Statutory Bond)
### Defendants Norman and Liberty Mutual Insurance Company

167. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

168. Defendants Jane Doe 1-4, Mauney, and Fitch engaged in intentional conduct of forcing Plaintiff to disrobe on camera, inflicting shame and humiliation, denying Plaintiff access to medical care, and subjecting Plaintiff to racially disparate treatment.

169. Defendants Jane Doe 1-4, Mauney, and Fitch acted in the scope of their employment as law enforcement officers and under color of their office.

170. Defendant Sheriff Alan Norman and his Surety are liable to Plaintiff under N.C. Gen. Stat. § 58-76-5 for the actions of Defendants Jane Doe 1-4, Mauney, and Fitch.

171. Upon information and belief, Defendant Liberty Mutual Insurance Company holds the bond for Defendant Sheriff Alan Norman.

172. As a direct and proximate result of Defendants Jane Doe 1-4, Mauney, Fitch, and Norman's conduct, Plaintiff suffered damages including but not limited to untreated concussion symptoms, excruciating and debilitating headaches, persistent neurological damage, punitive shame and humiliation, racially disparate treatment, loss of liberty, loss of security in her person, pain and suffering, psychological and emotional trauma, costs and attorney fees.

173. Plaintiff demands and is entitled to payment under Defendant Sheriff Norman's bond pursuant to N.C. Gen. Stat. § 58-76-5.

174. Plaintiff further demands and is entitled to recover on the bond for all damages allowed under statutory authority and may sue repeatedly on the bond until the full judgment is paid.

**FOR A SIXTEENTH CAUSE OF ACTION**
**(Gross Negligence)**
**Defendants NCHP, NCDPS, and Cleveland County Sheriff's Office**

175. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

176. Defendant Wade, in his official capacity, otherwise identified as NCHP, owed Plaintiff a duty of care both as a citizen interacting with a North Carolina State Trooper and as an arrestee.

177. Defendant Wade, in his official capacity as an agent and/or employee of NCDPS, owed Plaintiff a duty of care both as a citizen interacting with a North Carolina State Trooper and as an arrestee.

178. Defendants NCHP and/or NCDPS had a duty of reasonable care and to ensure the physical and safety and emotional wellbeing of Plaintiff during her interactions with a North Carolina State Trooper, including but not limited to refraining from harassment, threats of restraint and bodily harm, and threats of unlawful arrest.

179. After Plaintiff was unlawfully arrested, Defendants NCHP and/or NCDPS had a duty of reasonable care and to ensure the physical safety and emotional wellbeing of Plaintiff as an arrestee, including but not limited to refraining from the use of unreasonable restraint and unreasonable force.

180. Defendant Sheriff Norman, in his official capacity, and otherwise identified as Cleveland County Sheriff's Office, owed Plaintiff a duty of care as a person in custody of the Cleveland County Detention Center as a pretrial detainee.

181. Defendant Cleveland County Sheriff's Office had a duty of reasonable care and to ensure the physical safety and emotional wellbeing of Plaintiff while she was in its custody, including but not limited to refraining from harassment, humiliation, and racially disparate treatment and providing adequate medical care.

182. Defendants were grossly negligent in the following particulars:

   a. Failing to appropriately train and supervise their employees;
   b. Unreasonably harassing Plaintiff while she was peacefully resting in her own vehicle off the side of a roadway;
   c. Unreasonably and without authority demanding that Plaintiff produce identification or be arrested;
   d. Unlawfully arresting Plaintiff;
   e. Unreasonably restraining Plaintiff by pinning her against her van and forcibly handcuffing her wrists;
   f. Violently throwing Plaintiff to the ground while holding her wrists behind her back;
   g. Forcing Plaintiff to undress in the view of a security camera so that others could watch;
   h. Denying and/or ignoring Plaintiff's requests for medical care;
   i. Forcing Plaintiff to endure hours of excruciating pain and suffering;
   j. Allowing Plaintiff's medical condition to deteriorate and worsen despite her requests for treatment;
   k. Subjecting Plaintiff to racially disparate treatment;
   l. Punishing Plaintiff by placing her on lockdown for no legitimate purpose;
   m. Failing to act as a reasonably prudent law enforcement agency under similar circumstance; and
   n. In such other particulars as the evidence may show.

183. As a direct and proximate result of this grossly negligent and malicious conduct, Plaintiff suffered damages including but not limited to an unlawful arrest, closed head injury, concussion, broken nose, broken teeth, lacerations and contusions to her face and lips, injury to her knees, untreated concussion symptoms, excruciating and debilitating headaches, persistent neurological damage, punitive shame and humiliation, racially disparate treatment, loss of liberty, loss of security in her person, pain and suffering, medical costs, lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

184. Plaintiff demands and is entitled to actual, consequential, and punitive damages in an amount to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

A.  For all actual and consequential damages;

B.  For reasonable costs associated with this actions;

C.  For pretrial interest on each of the judgments for Plaintiff;

D.  For reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and any other applicable statute;

E.  For a penalty of five hundred ($500.00) dollars under N.C.G.S. § 162-50 due to the actions and omissions of Defendants Jane Doe 1-4, Mauney, and Fitch, imputed to the Cleveland County Sheriff's office, which constitute a willful failure or neglect to perform duties imposed upon them;

F.  For treble damages under N.C.G.S. § 162-55 for the actions and omissions of Defendants, in both their individual and official capacities, which exhibit such a thoughtless disregard of their consequences and heedless indifference to Plaintiff's rights and safety;

G.  For punitive damages to the extent allowable by law; and

H.  For all such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Darlene Harris*
Darlene Harris
N.C. State Bar No. 46087
Power In Protection
1026 Jay Street B184
Charlotte, NC 28208
Telephone: (704) 313-8816
Email:Darlene@powerinprotection.com

*Counsel for Plaintiff*

23